UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIECZYSLAWA GUBANSKA,

     Plaintiff,

v.                                                          Case No. 05-70805

E & E MANUFACTURING CO.                HONORABLE AVERN COHN

     Defendant.

_____/


**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction.**

     This is an employment case under the Family Medical Leave Act (FMLA), 29

U.S.C. § 2601 et seq., and the Employment Retirement Income Security Act (ERISA),

29 U.S.C. § 1001 et seq.  Plaintiff Mieczyslawa Gubanska (Gubanska) says Defendant

E & E Manufacturing Company, Inc. (E & E) violated the FMLA and ERISA when it

discharged her while she was on medical leave.  Gubanska's First Amended Complaint

against claims:

          Count One:        Violations of the FMLA (entitlement claim);[1]

          Count Two:        Retaliation for having exercised FMLA rights;

          Count Three:      Interference with FMLA rights;

          Count Four:       Violation of an ERISA benefits plan.

     Before the Court is E & E's motion for summary judgment.  For the following

_____

[1] Gubanska does not explain how this claim differs from an interference claim.

reasons, the motion will be granted.

## II. Background.[2]

### A.

Beginning on April 16, 1996, E & E employed Gubanska as an associate in its assembly department. Gubanska participated in E & E's employee benefit plan (the Plan). Gubanska and her husband Miron Gubanska (Miron) owned a building in Hamtramck where Miron operated a grocery store. Gubanska's family lives in an apartment above the store. There is an internal staircase connecting the grocery store to the apartment. Gubanska says members of the family often visited the grocery store to socialize or get food. Gubanska's son, Krzysztof (Kristoff), also worked for E & E at all relevant times.

In December, 2003, Gubanska submitted a note from Doctor Agata Michalczak of the Shenandoah Clinic (Clinic) to E & E diagnosing Gubanska with back pain and prohibiting her from lifting, pulling or pushing five pounds or more from December 18, 2003, through January 30, 2004.[3] Gubanska worked at E & E during this period; there is some dispute about whether E & E complied with the work restrictions at all times.

On March 3, 2004, Gubanska visited Dr. Michalczak at the Clinic because she

---

[2] The background is gleaned from the parties' papers.

The parties followed the Court's summary judgment motion practice guidelines but for the following exception: Gubanska did not file a statement of material facts in dispute. For the Court's motion practice guidelines, see http://www.mied.uscourts.gov/_practices/Cohn/motion.htm.

[3] Gubanska says she had been suffering from shoulder and back pain continuously since 2002.

2

was experiencing pain in her shoulders and back.  Gubanska received another medical note, but could not read it.[4]  Kristoff brought the note to E & E's human resources department.  David Brukoff (Brukoff), E & E's human resources manager, received it in early March, 2004.  Brukoff asked no questions about the note.  The note states: "The above patient needs to be off work from 3/3/04 until 3/21/04.  May [return to work] on 3/22/04."  The note contained no diagnosis and no information as to whether Gubanska's unspecified medical condition was work-related and covered under workers compensation.  Brukoff testified at his deposition that Kristoff told him that Gubanska had fallen and hit her head.  Kristoff, in an affidavit, says he never told anyone that Gubanska had fallen or suffered any particular injury.

**B.**

E & E expected employees to provide notice to the human resources department if he or she wanted to take leave so that E & E could properly classify the leave.  If E & E did not receive sufficient information to classify the leave, the human resources department asked the employee for medical documentation.  E & E could also ask an employee seeking leave for an independent medical exam or a second opinion.  E & E says that when the information submitted by the employee was insufficient to allow it to determine whether the employee's condition was work-related, Bruckoff contacted the health care provider directly for additional information.  At his deposition, Bruckoff testified that he called health care providers on occasion, but could not think of any instances where he did so.

---

[4] It is unclear whether Gubanska does not understand English, or just could not read Dr. Michalczak's handwriting.  Gubanska is fluent in Polish.

3

The information Gubanska provided was insufficient for Brukoff to classify the leave under FMLA or workers compensation.  E & E says Bruckoff called the Clinic to find out why Gubanska needed to miss work.  Bruckoff says a person at the Clinic advised him that Gubanska had to be off work because of head trauma and an ingrown toenail.  Brukoff made a note of this for his records.  E & E attached Brukoff's note as proof of the conversation.  Brukoff concluded that the leave was not work related. Gubanska says Bruckoff never spoke to Dr. Michalczak, another doctor, or any employee of the Clinic about her medical condition.  Gubanska provides affidavits from numerous employees of the Clinic stating that nobody released the information to Bruckoff because she had not authorized the clinic to release her private medical information to E & E.

At some point in March, 2004, E & E's human resources department gave Kristoff a disability claim form and physician statement for Gubanska and her doctor to complete.  On or about March 8, 2004, Dr. Michalczak completed the physician statement, and Kristoff returned the form and physician statement to E & E.  On the physician statement, Dr. Michalczak diagnosed Gubanska with back and leg pain.  On or about March 11, 2004, E & E submitted Gubanska's application for short term disability benefits under the Plan to its third party administrator.

On or about March 15, 2004, E & E informed Gubanska in writing that her leave of absence was to be considered under the FMLA, that her FMLA-approved leave would expire on May 25, 2004, and that her position at E & E would be secure until then.  At  E & E's request, Gubanska's physician completed a FMLA certification form.

**C.**

4

E & E says Brukoff at this time thought inconsistencies existed between Dr. Michalczak's comments on the forms, Kristoff's explanation, and the information he received when he called the doctor's office.  Brukoff says there were rumors that Gubanska did not want to work at E & E, and instead wanted to go on disability leave, continue to receive benefits, and work at the grocery store with her husband.  At her deposition, Carol Wirth, a human resources employee, testified that she heard this from Sheryl Hoover and Agnes Nikonowicz , and also heard Gubanska was working while on disability, and told the individuals to talk to Brukoff.[5]  Brukoff does not specify who he heard the rumors from, and later talked about the rumors with Wirth.  Gubanska says that she did not work in the grocery store while on leave, and that no such rumors existed.  Gubanska admits to seeing coworkers in the grocery store.[6]

On March 15, 2004, Brukoff hired an investigator to determine whether Gubanska was working while on leave.  E & E had never hired an investigator before; Brukoff says he had done so while working for another company.  Brukoff did not request an independent medical examination.  E & E says Brukoff simply wanted to know whether Gubanska was working while on leave which another medical exam would not disclose; Gubanska says Brukoff did not follow E & E's policy and past practice of consulting a health care provider to determine whether an employee was disabled.  Brukoff gave the investigator a description of Gubanska; it is unclear whether

---

[5] E & E provides affidavits from Sheryl Hoover, Wanda Daniels and Agnes Nikonowicz stating that they worked with Gubanska and that there were rumors that she was working in the grocery store while on disability.  Hoover, in her affidavit, says she passed along this information to Brukoff.

[6] Gubanska also says these rumors are inadmissible hearsay.

5

he provided a photograph of her.[7]

On March 16, 2004, the investigator monitored the grocery store and apartment from 6:00am until 12:00pm.[8]  The investigator entered the store twice.  The investigator did not see Gubanska at all.

On March 17, 2004, the investigator returned to the grocery store at about 3:00pm and began monitoring the store.  At about 4:30, the investigator entered the store; Gubanska greeted the investigator while standing behind the register.  The investigator went to the cooler, got a pop, and went to the register.  The investigator observed that Gubanksa was then standing behind the confection and meat counter assisting a customer; another man, possibly Miron, operated the cash register.  The investigator returned to his vehicle.  At about 5:50pm, the investigator re-entered the grocery store and observed Gubanska behind the confection and meat counter assisting another customer.  The investigator made another small purchase and returned to vehicle.  The investigator left at about 6:00pm.[9]

Gubanska says she never worked at the grocery store and the investigator's report is vague and open to interpretation as to whether she was working or just visiting and socializing with customers during the brief period the investigator may have seen her.  At his deposition, the investigator says Gubanska was just talking to a customer

---

[7] Brukoff says he gave the investigator a photograph.  The investigator testified that he did not receive a photograph.

[8] The description of the investigator's activities come from the investigator's report and is not independently verifiable.

[9] There appears to be external video of the grocery store, but no video of Gubanska's activity inside the grocery store.

6

and he could not hear them.

## D.

Brukoff says he assumed Gubanska could not do any work when she provided documentation that she could not work at E & E.  The employee handbook states: "All reporting of information must be accurate, timely, and a fair representation of all of the facts."  One example of employee misconduct in the handbook is: "Falsification of personnel, production or other Company records [or] the use of falsified documents."  Upon receiving the report, Brukoff contacted Craig Idema, his supervisor, and E & E's attorney about whether he could terminate Gubanska.  It is unknown what advice he received, and Idema does not recall talking to Brukoff at this time.

On March 19, 2004, Brukoff sent Gubanska a letter stating: "Based on the information received, it is the company's determination that you have submitted false information concerning your medical condition, and ability to work.  Accordingly your employment is hereby terminated, effective March 19, 2004."  E & E says Brukoff did not consider Gubanska's work history in making the decision.  Gubanska says her leaves of absence placed a great burden on E & E, thus causing them to discharge her.

Brukoff subsequently spoke with Gubanska by telephone and met with her;[10] he did not change his decision.  Gubanska received $76.34 in short term disability benefits covering March 17 through March 18, 2004.  E & E says Gubanska never challenged the termination of benefits under the Plan; Gubanska says neither E & E nor the Plan administrator informed her of any post-termination rights, and that Brukoff ignored her

---

[10] It appears that a Polish interpreter was present at the meeting, but did not participate in the telephone call.

inquiries about her rights.

E & E says many employees have returned to work from FMLA leave since 2000 without problem; Gubanska says she was treated differently than other employees taking medical leave from E & E.[11]

### III. Discussion.

### A. Legal Standard.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

---

[11] At some point during Gubanska's employment with E & E, Kristoff became unable to work full-time and lost his health benefits and bonus plan. E & E's president, however, arranged health insurance coverage for Kristoff, directed that Kristoff be included in the bonus plan, and increased Gubanska's pay to offset the increased cost of the insurance coverage. E & E terminated Kristoff in 2005 for unknown reasons.

summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## B. The FMLA Claims.

### 1. Introduction.

Under the FMLA, an eligible employee is entitled to take up to 12 weeks of leave during any 12-month period for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. Following FMLA leave, the employee is entitled to be reinstated to his or her former position, or a substantially similar position. 29 U.S.C. § 2614(a). The FMLA prohibits employers from interfering with, restraining, or denying the exercise of

9

these rights.  29 U.S.C. § 2615(a)(1).  An employer who interferes with an employee's

rights under the FMLA may be held liable in a civil suit.  29 U.S.C. § 2617; Miller v.

Defiance Metal Prods., Inc., 989 F.Supp. 945, 946 (N.D. Ohio 1997).  An employer may

not retaliate against an employee for taking leave under the FMLA.  29 U.S.C. § 2615;

29 C.F.R. § 825.220(c);  Chandler v. Specialty Tires of Am. (Tenn.), Inc., 283 F.3d 818,

825 (6th Cir. 2002).

   An FMLA interference claim has the following elements: (1) an eligible employee;

(2) a covered employer; (3) an entitlement to FMLA leave; (4) notice to the employer of

an intention to take FMLA leave; and, (5) the employer denied FMLA benefits the

employee was entitled.  Cavin v. Honda of Amer. Mfg., Inc., 346 F.3d 713, 719 (6th Cir.

2003).  E & E says its denial of benefits must have been related to the exercise or

attempted exercise of FMLA rights.  Jones v. Denver Pub. Sch., 427 F.3d 1315, 1319

(10th Cir. 2005).  As the Court reads Cavin, an employer cannot have interfered with an

employee's FMLA rights if the denial of benefits was the result of an unrelated

termination of employment.  A valid discharge cannot alone establish a prima facie case

of interference with FMLA benefits.[12]

   In order to establish a prima facie case of FMLA retaliation, a plaintiff must show

that (1) she availed himself of a protected right under the FMLA, (2) she was adversely

affected by an employment decision ..., and (3) the proximity in time between [his]

request for leave and his discharge [establishes] a causal connection between his

_____

   [12] It is incongruous for an employee to be able to assert an interference claim but
not a retaliation claim when the only interfering or retaliatory action by the employer
causing a termination of benefits is the employee's discharge.

10

exercise of a right under the FMLA and the adverse employment decision."  Skrjanc v.
Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001).

Once a prima facie case has been made, the burden shifts to the defendant to
demonstrate a legitimate, nondiscriminary reason for the plaintiff's discharge.  Skrjanc,
272 F.3d at 315.  If the defendant articulates such a reason, then the burden shifts back
to the plaintiff to show that the proffered reason is pretextual.  Skrjanc, 272 F.3d at
315.[13]

### 2.  The Prima Facie Case.

It is not disputed that Gubanska qualified for FMLA leave under 29 U.S.C. §
2611.  What is disputed is whether there is any connection between Gubanska's
discharge and her exercise of FMLA rights.  Gubanska says the 16 days between
March 3, 2004, when she applied for FMLA leave, and March 19, 2004, when Brukoff
discharged her, plus Brukoff's reliance on rumor and manufactured evidence,
constitutes a connection.  Gubanska says evidence that an employee was discharged

---

[13] E & E's motion does not address the legal standard of Gubanska's so-called
"entitlement claim" (Count 1), though it sounds like an interference claim.  Gubanska
says an employee may be dismissed only if the dismissal would have occurred
regardless of the employee's request for or taking of FMLA leave.  Gunnell v. Utah
Valley State College, 152 F.3d 1253 (10th Cir. 1998).  The Court understands Count 1
to be analyzed under the same burden shifting analysis as the interference and
retaliation claims, and is subsumed in the Court's consideration of these claims.
        Gubanska says such burden shifting analysis is inappropriate in all FMLA claims.
Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 712 (7th Cir.1997).  But Diaz does not
reject the framework itself, and instead says courts should "proceed directly to the
question whether the evidence would permit a rational trier of fact to conclude that the
statute has been violated," and later recognizes that the burden shifting analysis is
"useful."  Diaz, 131 F.3d at 712.  The Court will apply the burden shifting standard set
forth in Skrjanc, with an understanding that the real issue is whether a rational jury could
decide that E & E violated the FMLA.

21 days after engaging in protected activity has been sufficient to establish this causal connection so as to create an inference of retaliatory motive. DiCarlo v. Potter, 358 F.3d 408 (6th Cir. 2004). Gubanska says E & E and Brukoff manufactured an inconsistency in her medical documentation,[14] made up rumors of her plan to work and witnesses of her work at the grocery store while on FMLA leave, and fabricated an investigation which concluded, in vague terms, that she was working while on FMLA leave.

Besides the temporal connection, Gubanska's evidence supporting a prima facie case simply challenges E & E's asserted legitimate, non-discriminatory reason for discharging her.[15] She has no evidence of hostility toward her by Brukoff or any other supervisor for having taken FMLA leave, or any evidence beyond her statements that her absence caused problems at E & E. She took FMLA leave earlier in the year and returned to work without incident. She does not state that other similarly situated employees were denied FMLA, or reported any problems a supervisor had with her leave.

Essentially, Gubanska has only the temporal connection. DiCarlo, upon which Gubanska primarily relies, is an age, disability, and national origin discrimination and retaliation case. The plaintiff's supervisor made numerous derogatory comments about plaintiff's ethnicity and age, and denied him an opportunity to take a break even though

---

[14] Gubanska notes that Brukoff's handwritten note and the alleged report from Kristoff conflicts with the medical documents, not any medical documents themselves.

[15] This evidence will be considered below; challenges to E & E's asserted reasons for discharging Gubanska are not evidence supporting a prima facie case.

12

he had a disability.  Plaintiff filed an EEOC charge, and his supervisor terminated him

21 days later alleging unsatisfactory performance.  The DiCarlo court reversed the

district court's grant of summary judgment on the retaliation claim and found that plaintiff

had established a prima facie case because of the close temporal proximity between

the filing of an EEOC charge and his discharge, despite the supervisor's claims of

unsatisfactory performance.  The court did not discuss the impact of the discriminatory

comments in deciding that plaintiff made out a prima facie case.

Here, the temporal connection is the only basis for establishing the connection

between the exercise of FMLA rights and her discharge.  Even if the rumors, the

allegedly conflicting medical reports, and the investigator's report did not exist at all,

there is no evidence that the exercise of her FMLA benefits was related to her

discharge.  However, despite the differences between this case and DiCarlo, it is

possible that a rational fact finder could infer from the temporal proximity alone that the

FMLA activity had something to do with her discharge.  Therefore, Gubanska has

established a prima facie case of FMLA interference and discrimination.

### 3.  E & E's Legitimate Employment Decision.

The burden now shifts to E & E to put forth a legitimate, non-discriminatory

reason for discharging Gubanska.  E & E points to the inconsistent medical diagnoses,

the rumors about Gubanska's motive for taking FMLA leave and activities at the grocery

store during her FMLA leave, and the investigator's report that Gubanska was working

at the grocery store during her leave.  Gubanska agrees that E & E has proffered a

legitimate basis for discharging her.

### 4.  Whether E & E's Basis for Discharge was Pretextual.

13

**a.**

Though she agrees E & E has proffered a legitimate basis for discharging her, Gubanska says E & E's reasons are pretextual. E & E's proffered legitimate basis for discharging Gubanska must have been honestly held to be valid. To be honestly held, E & E must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Chrysler, 155 F.3d at 807. An employer's business judgment is not an absolute defense to unlawful discrimination. Wexler v. White Furniture, Inc., 317 F.3d 564 (6th Cir. 2003).

Gubanska says there are three ways to show reasons are pretextual: (1) the proffered reasons for the discharge have no basis in fact; (2) the proffered reasons did not actually motivate the discharge; or (3) the proffered reasons were never used in the past to discharge an employee. Chrysler, 155 F.3d 799.

**b. Gubanska's Argument.**

Gubanska says E & E's proffered reasons for discharging her are pretextual. First, Gubanska says there was no inconsistent medical documentation. Gubanska says the only inconsistency was (a) between the medical documentation and the disputed statements by Kristoff and (b) between the medical documentation and the disputed information Brukoff says he received from someone at the Clinic. Gubanska offers affidavits from each employee at the Clinic stating that nobody provided such information to Brukoff, and Brukoff does not recall with whom he spoke. Gubanska

14

says if Brukoff's testimony about Kristoff's comments and the information he says he received from the Clinic are untrue, then no discrepancy in the medical documents exists.

Second, Gubanska says there were no rumors at E & E about her desire to work with her husband while on leave. Gubanska challenges the affidavits which attempt to substantiate the rumors, and says Brukoff and Wirth are confused as to who mentioned the rumors first, meaning the rumors are untrue.

Third, Gubanska says ambiguity in the investigator's report make the report unreliable as a basis for discharging her. Gubanska points out that Idema and Wirth testified at deposition that the report was not clear enough to discharge her, meaning Brukoff did not reasonably rely on the report. Gubanska says the investigator may not have viewed Gubanska, as the investigator says he did not have a picture of her, and, if it was her, the investigator only saw her standing and talking to two people on two occasions for a few minutes. Gubanska says the investigator did not see her working and concluded that additional surveillance was warranted.[16]

Finally, Gubanska says the following are inconsistencies in the facts that preclude summary judgment: Idema does not recall Brukoff asking him about the decision to discharge Gubanska or contacting a lawyer about the decision; Idema testified that Brukoff lacked some tools for being a human resources manager; Brukoff

---

[16] Gubanska says Brukoff's failure to talk to the investigator during the investigation makes the report unreliable because Brukoff could have guided the investigation. Brukoff's failure to do this does not impact what is in the report, however, and the report is the only record of the investigation that Brukoff had when he made the decision to discharge Gubanska. What Brukoff could have done is immaterial.

15

treated Gubanska differently by not requesting an independent medical exam and instead hiring a private investigator. Gubanska says these inconsistencies add to the disputed issues of material fact in the case.

### c.  E & E's Argument.

E & E says it reasonably relied on the inconsistent medical information, the rumors about Gubanska's desire to take leave to work with her husband and the rumors that co-workers saw her working at the grocery store while on leave, and the investigator's report that Gubanska appeared to be working, when it decided to discharge Gubanska. E & E says it has articulated the particularized facts necessary to support its termination decision, and need not justify its decision to conduct the surveillance. Stonum v. U.S. Airways, Inc., 83 F. Supp. 2d 894, 901 (S.D. Ohio 1999).

E & E says Brukoff, after receiving the note the Gubanska was to be off work, followed up to determine whether the injury was work-related, and ultimately received inconsistent information. E & E says Wirth testified that Hoover and Nikonowicz told her of conversations in the lunch room in which Gubanska said she was going to go on disability just like her friend and work somewhere else, that Wirth told them to talk to Brukoff, and that Brukoff subsequently talked to Wirth about the story.

E & E says it then hired the private investigator because an independent medical examination would not have answered whether Gubanska was working while on FMLA leave. E & E says it had no obligation to speak with Gubanska before hiring the investigator or discharging her. Stonum v. U.S. Airways, Inc., 83 F. Supp. 2d 894, 899 (S.D. Ohio 1999). E & E says it was reasonable to rely on the investigator's report because it stated that Gubanska was seen working during the investigator's two visits to

16

the store on March 17, 2004, which was consistent with the rumors, and that was an appropriate basis to conclude that Gubanska had falsely claimed to be unable to work.

E & E says both Wirth and Idema testified that they had little knowledge of the investigation and insufficient information to draw conclusions about it, so their speculation as to what they would have done is irrelevant.  E & E says Wirth testified that she had never been involved in employee terminations.  E & E also says Idema testified that Brukoff eventually left E & E after five years of employment for perceived shortcomings in employee training and forecasting future human resources needs, and that Brukoff had done a good job implementing its termination policies and procedures.

E & E says the affidavits from the employees of the Clinic lack credibility because they were first made about two years after the fact and there are no supporting records.[17]  E & E says Gubanska was not treated differently than other employees as she is the only E & E employee on medical leave about whom it received inconsistent medical information, and information suggesting the employee was working during the leave.[18]

E & E concludes that its investigation and conclusion need not be perfect or exhaustive to constitute a reasonable legitimate reason for termination.  Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672 (7th Cir. 1997).

**d. Resolution.**

---

[17] No party has submitted phone records from March, 2004, which might show whether someone from E & E called the Clinic.

[18] E & E says numerous employees, including Gubanska, have taken and returned from FMLA leave without problems.

The essential question is whether the Court can state that there is no genuine issue of material fact over whether E & E had an objective and good faith belief that Gubanska had violated company policy based on the information before it when discharging Gubanska, and did not do so based upon her exercise of FMLA rights. Gubanska attempts to create disputes regarding the underlying medical documentation and rumors to argue that the investigation was unwarranted and reflected Brukoff's retaliatory motive. And Gubanska further attempts to create factual disputes regarding the clarity of the investigator's report to support the decision to discharge her. E & E cites purportedly analogous cases where courts held for an employer. Gubanska correctly distinguishes these cases as involving more egregious violations by the employee and substantially more evidence than exists here.[19] Gubanska cites cases where courts have held for an employee, but each case involves clear disputed questions of material fact that are not present here.

Whether he was correct or not, at some point Brukoff concluded that Gubanska's medical documentation was inconsistent. Whether reliable or not, at some point Brukoff and Wirth heard rumors that Gubanska wanted to work and was working while on FMLA leave. Upon receiving the investigator's report, Brukoff concluded, correctly or not, that Gubanska had violated company policy by submitting documentation that she was unable to work.

_____

[19] In Harris v. Elec. Data Sys. Corp., 1996 WL 99311 (6th Cir. March 6, 1996), the defendant had more concrete evidence that plaintiff was working while on leave, yet plaintiff attempted to dispute the veracity of the evidence, as Gubanska does here. The plaintiff in Harris, unlike here, presented some evidence of animus on the part of her supervisors, yet the court was unable to find a disputed issue of material fact. While helpful, Harris does not dictate an outcome in this case.

18

Gubanska basically says E & E made up all of the reasons after the fact and instead discharged her for taking FMLA leave.[20]  But, as stated above, the only connection between the FMLA leave and the termination is the temporal proximity. There is no evidence of animus toward Gubanska, and her attempts to poke holes in E & E's legitimate business reasons do not create a genuine issue of material fact as to whether E & E's reliance on the information it had was reasonable.  While there are disputed issues of fact, none of the disputes are material to the outcome.  E & E's legitimate reasons for discharging Gubanska are not pretextual as a matter of law.[21]

## C.  The Erisa Claim (Count 4).

### 1.  Introduction.

---

[20] While Gubanska can challenge affidavits, she cannot challenge deposition testimony.

In her response brief, Gubanska moves to strike Sheryl Hoover, Agnes Nikonowicz, and Wanda Daniel's affidavits.  Gubanska says the affidavits contain only rumor and inadmissible hearsay, and E & E failed to disclose each person in its initial disclosures under FRCP 26(a).  Gubanska also says Hoover's affidavit conflicts with Brukoff's deposition testimony.  E & E says it does not believe it had a duty to disclose the identities of these individuals under the Rule, and that any error it may have committed is harmless because Wirth identified each in her October, 2005, deposition as the source of her knowledge of Gubanska's plans while on leave, Gubanska had the opportunity to depose them and chose not to, and E & E has no objection to them being deposed now.

The deposition testimony adequately supports E & E's position, thus the affidavits are unnecessary to the Court's disposition of the case.  The motion to strike is moot.

[21] Employers cannot rely simply on vague, inconclusive reports from private investigators to win summary judgment.  But neither can an employee simply assert that all evidence leading up to his or her discharge is fabricated to prevent summary judgment.  Here, Gubanska tries to avoid summary judgment by simply saying Brukoff, Wirth, the rumors, and the investigator are untruthful.  Gubanska needs more than this scintilla of evidence to show E & E acted unreasonably in relying on this information, whether correct or not, to avoid summary judgment.

19

ERISA makes it unlawful for an employer to discharge or discriminate against a participant in a covered benefit plan for the purpose of interfering with the attainment of a right to which the participant may become entitled under the plan.  29 U.S.C. § 1140. Gubanska must show three basic elements: (1) employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.  Humphreys v. Bellaire Corp., 966 F.2d 1037 (6th Cir. 1992).  A plaintiff must show that the defendant had a specific intent to violate ERISA, but need not show that the employer's sole purpose in discharging the plaintiff was to interfere with an entitlement to benefits.  Humphreys, 966 F.2d 1037.  The payment of ERISA benefits must be a motivating factor behind the discharge.  Lightfoot v. Union Carbide Corp., 110 F.2d 898, 906 (2nd Cir. 1997).

Courts analyze ERISA interference claims with the same burden-shifting analysis described above.  Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997).  First the Court considers whether Gubanska establishes a prima facie case, then E & E must put forth a legitimate reason for the discharge, then Gubanska must show why that reason is pretextual.

**2.  Resolution.**

Gubanska says the Court can infer an illegal motive by E & E due to the temporal proximity between the time she filed for disability benefits and her discharge.  Gubanska says she was known to be a good employee for many years, received regular raises, and was third in seniority in her division.  Gubanska says E & E has been dishonest in describing the medical documentation, the rumors, and the investigative report. Gubanska says E & E had a substantial economic incentive to discharge her because it

20

self-funds its ERISA Plan, and providing short or long term disability benefits to
Gubanska throughout her potential eligibility would have become extremely costly.
Gubanska was 53 when she was discharged, and says she could have received
benefits until she was 65.

Even if Gubanska can establish a prima facie case, she cannot create a genuine
issue of material fact as to whether E & E's reasons for discharging her are pretext and
it instead discharged her for exercising her ERISA rights.  E & E timely provided all
necessary forms to Gubanska and filed for disability benefits on her behalf without
delay.  E & E began paying benefits to Gubanska.  Only after receiving the
investigator's report did E & E discharge her.  E & E says it routinely provides disability
benefits to its employees, sometimes goes beyond what is required, and cites its past
generosity in providing Kristoff with benefits as an example.

But consideration of such past behavior is unhelpful.  As described above in
resolving the FMLA claims, the Court need only decide whether E & E made a
reasonably informed and considered decision[22] when it relied on the information before
it in deciding to discharge Gubanska.  As above, the Court finds that there is no
disputed issue of material fact that E & E did so act, therefore there is no question that
E & E's reasons are not pretextual.

---

[22] E & E could have done more investigating, but an employer could always do
more investigating before making an employment decision.  The question here is
whether E & E made a reasonably informed and considered decision.  Chrysler, 155
F.3d at 807.

21

**D.  Conclusion.**

E & E's motion for summary judgment is GRANTED.  The case is DISMISSED.


Dated:  May 30, 2006              s/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 30, 2006, by electronic and/or ordinary mail.


                                  s/Julie Owens
                                  Case Manager
                                  (313) 234-5160

22